UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JIMMY ANTHONY COX, SR., <br><br> Plaintiff, <br><br> v. <br><br> JOHN DRAPER et al., <br><br> Defendants. | Case No. 2:20-cv-00081 <br><br> Chief Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Alistair E. Newbern |

To: The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

**REPORT AND RECOMMENDATION**

This civil rights action brought under 42 U.S.C. § 1983 arises out of pro se and *in forma pauperis* Plaintiff Jimmy Anthony Cox, Sr.'s pretrial detention at the Jackson County Jail (JCJ) in Gainesboro, Tennessee. (Doc. No. 1.) Cox alleges that Defendant JCJ Corrections Officers Shane Stanton and Philip Davis used excessive force against him in violation of the Fourteenth Amendment to the United States Constitution and that Defendant JCJ Jail Administrator Tamorah D. Ryan overlooked these uses of excessive force and prevented Cox from filing complaints about them. (*Id.*) Before the Court is Stanton and Ryan's motion for summary judgment (Doc. No. 33), to which Cox has not responded in opposition. For the reasons that follow, the Magistrate Judge will recommend that Stanton and Ryan's motion for summary judgment be granted.[1]

---

[1] The Magistrate Judge will address Cox's claims against Davis by separate order.

I.      **Background**

   A.    **Factual Background**[2]

Cox was arrested on June 9, 2020, "on charges of theft, resisting arrest, felon[ ] carrying a weapon, driving on a suspended or revoked license, possession of a Schedule V drug, and three counts of aggravated assault." (Doc. No. 37, PageID# 191, ¶ 1.) Cox was brought to the JCJ following his arrest (Doc. No. 35), where he developed a reputation for "be[ing] aggressive and hostile to corrections officers and other inmates" (Doc. No. 37, PageID# 191, ¶ 2). For example, Cox was involved in a physical altercation with his cellmate on June 22, 2020. (Doc. Nos. 35, 35-1, 37.) After the altercation, Cox stated that his cellmate "'had it coming[,]'" while the cellmate stated that "Cox started hitting him in his sleep." (Doc. No. 35-1, PageID# 183, 184.)

On July 4, 2020, Stanton walked by Cox's cell door, saw that the "pie flap (that is used to pass food trays) was open[,]" and closed the flap as he walked by. (Doc. No. 37, PageID# 192, ¶¶ 4, 5.) Not long after, someone told Stanton that "Cox was yelling and hitting the door in his cell and Stanton was ordered to go find out what the issue was." (*Id.* at ¶ 6.) "When Stanton arrived, [ ] Cox was yelling about his pie flap being closed." (*Id.* at ¶ 7.) Stanton told "Cox to stop yelling and banging the door" and "that his pie flap would remain closed." (*Id.* at PageID# 193, ¶¶ 8, 9.) "Cox became agitated and started cursing at Stanton and kicking and banging his cell door." (*Id.* at ¶ 10.) "Stanton called for back-up . . . ." (*Id.* at ¶ 11.) Davis arrived, and Stanton and Davis told Cox to calm down (Doc. Nos. 36, 37), "but [Cox] became more belligerent[ ] and started to kick and bang the door again" (Doc. No. 37, PageID# 193, ¶ 12).

---

[2]     The facts in this section are drawn from Stanton and Ryan's statement of undisputed material facts (Doc. No. 37), declarations (Doc. Nos. 35, 36), and exhibits (Doc. Nos. 35-1, 35-2).

2

Davis ordered "Cox to move to the back of his cell and to put his hands behind his back so the officers could enter the cell[,]" but "Cox did not comply with the directive." (*Id.* at PageID# 194, ¶¶ 15, 16.) Stanton entered Cox's cell as "Cox was putting on a shirt" and "Stanton again directed Cox to put his hands behind his back." (*Id.* at ¶¶ 17, 18.) "Cox, again, refused to comply." (*Id.* at ¶ 19.) "Stanton approached and took [ ] Cox's arm to place it behind his back[,]" but "Cox began to resist being handcuffed." (*Id.* at PageID# 195, ¶¶ 20, 21.) Because of Cox's resistance, "Stanton . . . attempt[ed] to place [ ] Cox against the wall to assist in handcuffing him" and "to neutralize [ ] Cox's ability to resist." (*Id.* at ¶¶ 22, 23.) "Stanton continually yelled at [ ] Cox to stop resisting, however, Stanton was never able to use enough force to gain control of the situation or [ ] Cox." (*Id.* at ¶ 24.)

Stanton eventually handcuffed one of Cox's wrists while he and Cox continued to struggle. (Doc. No. 37.) But before Stanton "could place [ ] Cox against the wall" and handcuff his other wrist, "Cox headed for the cell door and exited into the pod in a violent manner, dragging Stanton behind him." (*Id.* at PageID# 196, ¶ 26.) Stanton continued to struggle to handcuff Cox because Cox "was still non-compl[ia]nt and [Stanton] lacked control of Cox." (*Id.* at ¶ 27.) "At some point, as Stanton was being dragged into the main pod area, he managed to successfully handcuff[ ] [ ] Cox's second wrist." (*Id.* at ¶ 28.) Even after being handcuffed, "Cox continued to grapple toward the pod door" and to "struggle" with Stanton. (*Id.* at ¶ 29.) "Stanton continued to try to get [ ] Cox to the wall for a tactical advantage" while Cox "continued to fight, struggle, curse, scream, and flail all the way to the [b]ooking area." (*Id.* at PageID# 196, 197, ¶¶ 30, 31.) Stanton asserts that, "[d]uring the altercation, [he] feared for his own safety and only used the force that he believed was necessary to gain control of [ ] Cox." (*Id.* at PageID# 197, ¶ 32.) He further asserts that he did not use force on "Cox after he was subdued." (*Id.* at ¶ 33.)

"Ryan was not present during the altercation between Stanton and Cox"(*id.* at ¶ 34), and Ryan states in her summary judgment affidavit that she "was not aware of the incident until the following day[,]" when she "was able to observe . . security footage" of part of the altercation taken by cameras "in the day room of the pod" (Doc. No. 35, PageID# 181, ¶¶ 4, 5). Ryan states that "Stanton appeared to be struggling with [ ] Cox the entire time[,]" that "Cox was continually aggressive and non-compliant[,]" and that she "did not witness any evidence that [ ] Stanton purposefully tried to shove [ ] Cox into the wall without provocation." (*Id.* at ¶ 5.) Ryan states that "Cox did complain that his hand was cut but made no other complaints of injury" and "made no requests for medical care after this incident, nor was he seen for any." (*Id.*) She further states that "Cox was brought before the Disciplinary Board for the incident." (*Id.*) Ryan states that, "[o]n July 31, 2020, [ ] Cox was involved in another incident where he was non-complaint with . . . Davis" and that Ryan "was also not present for this incident" and was not "aware of it until after the fact." (*Id.* at ¶ 6.) Ryan asserts that she never condoned, encouraged, or approved "of any behavior known to be unconstitutional by any corrections officer." (Doc. No. 37, PageID# 197, ¶ 35.)

**B.     Relevant Procedural History**

Cox initiated this action by filing a pro se complaint for violation of his civil rights under 42 U.S.C. § 1983 against Stanton, Ryan, Davis, and several other defendants. (Doc. No. 1.) Cox alleged that Stanton tried to push him into a wall before and after handcuffing him and cut his right finger while roughly applying the handcuffs; that Davis gratuitously sprayed him with mace on two occasions; and that Ryan was responsible for Stanton's and Davis's behavior. (*Id.*) Cox's complaint seeks an award of damages, among other relief. (*Id.*) The Court granted Cox's application for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a) and screened his complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e. (Doc. Nos. 8, 9.) The Court found that Cox had stated colorable claims against Stanton and Davis in their individual

capacities for use of excessive force in violation of the Fourteenth Amendment based on altercations that Cox alleged took place on July 4 and 31, 2020. (Doc. No. 8.) The Court further found that Cox plausibly alleged that "Ryan ha[d] some level of supervisory responsibility over" Stanton and Davis, "d[id] not thoroughly investigate or punish officers' involvement in cases where force [was] used, and overs[aw] a system that limit[ed] the ways in which inmates [could] report such cases." (*Id.* at PageID# 73.) The Court therefore allowed Cox's claim against Ryan in her individual capacity to proceed. (Doc. No. 8.) The Court dismissed all the remaining claims and defendants in Cox's complaint. (Doc. Nos. 8, 9.) Stanton and Ryan appeared and answered Cox's complaint (Doc. Nos. 15, 19). Davis has not been served and has not appeared.

Stanton and Ryan have moved for summary judgment (Doc. No. 33), arguing that they are entitled to qualified immunity from Cox's claims because there is insufficient record evidence to demonstrate that they violated any of Cox's clearly established constitutional rights (Doc. No. 34). The Court informed Cox that "any response in opposition to the motion for summary judgment must be filed within 28 days of service of the motion" and warned him "that failure to respond . . . in accordance with the Federal Rule of Civil Procedure and this Court's Local Rules may result in a recommendation that the motion be granted as unopposed or the action be dismissed for failure to prosecute." (Doc. No. 38.) Cox has not responded in opposition to Stanton and Ryan's motion for summary judgment.

II.     **Legal Standards**

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if

the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence

in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

III.     **Analysis**

    A.     **Local Rule 56.01 and the Defendants' Initial Burden Under Federal Rule of Civil Procedure 56**

This Court's Local Rule 56.01 provides that "any motion for summary judgment . . . must be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). Under this rule, "[e]ach fact must be set forth in a separate, numbered paragraph [and] . . . must be supported by specific citation to the record." *Id.* Any party opposing a motion for summary judgment must specifically respond to each asserted fact by: "(1) Agreeing that the fact is undisputed; (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (response to statement of facts). Pro se parties are not excused from complying with these rules. *See* M.D. Tenn. R. 56.01(b)–(c). Indeed, the Court's scheduling order in this action instructed the parties to "refer to Federal Rule of Civil Procedure 56 and Local Rule 56.01 for summary judgment procedures[,]" described Local Rule 56.01's requirements, and warned the parties that "[f]ailure to respond in opposition to a statement of material fact may result in the Court assuming that the fact is true for purposes of summary judgment." (Doc. No. 21, PageID# 130); *see also* M.D. Tenn. R. 56.01(f) (failure to respond) ("If a timely response to a moving party's statement of material facts . . . is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment.").

Stanton and Ryan filed a statement of undisputed material facts that complies with the requirements of Local Rule 56.01(b) and includes citations to particular parts of materials in the record. (Doc. No. 37.) Cox did not file a response to Stanton and Ryan's statement of undisputed material facts. The Court is therefore required to take Stanton and Ryan's asserted facts as undisputed for purposes of summary judgment. *See* M.D. Tenn. R. 56.01(f). However, Cox's failure to respond to Stanton and Ryan's statement of undisputed material facts and motion for summary judgment does not lessen Stanton and Ryan's initial burden to show an absence of any genuine dispute of material fact under Federal Rule of Civil Procedure 56. *See Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991) ("[A] party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact . . . regardless if an adverse party fails to respond."); *Felix v. Young*, 536 F.2d 1126, 1135 (6th Cir. 1976) ("[T]he fact that the movant's affidavits are uncontroverted does not necessarily mean that summary judgment should be granted[;] the ultimate burden of proving the propriety of summary judgment remains on the moving party.").

"Rule 56 first imposes a burden of production on the moving party to make a prima facie showing that it is entitled to summary judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2022). "In this context, a 'prima facie' showing means that, in the absence of evidence to the contrary, the movant's evidence is sufficient to entitle the movant to summary judgment." 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.40 (3d ed. 2022). Courts must view the movant's evidence in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) ("[T]he moving party . . . ha[s] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to

the opposing party."). If the moving party's evidence is insufficient, "'[n]o defense . . . is required'" and summary judgment must be denied. *Id.* at 161 (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 56.22(2) (2d ed. 1966)); 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2022) ("If the movant fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.").

Accordingly, even though Cox has not responded to Stanton and Ryan's motion for summary judgment and statement of undisputed material facts, the Court still must examine Stanton and Ryan's evidence to determine if it is sufficient to satisfy their initial summary judgment burden. *See Adickes*, 398 U.S. at 160 ("'[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.'" (quoting Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment)). Under Rule 56(c)(3), the Court may also look to other materials in the record in its review. Fed. R. Civ. P. 56(c)(3).

### B. Cox's § 1983 Claims

"Section 1983 provides a civil enforcement mechanism for all inmates [and pretrial detainees] who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (second alteration in original) (quoting 42 U.S.C. § 1983). To prevail on a § 1983 claim, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010)).

Cox claims that the force Stanton used against him on July 4, 2020, violated Cox's right under the Fourteenth Amendment's Due Process Clause to be free from any use of force that

amounts to punishment. (Doc. No. 1.) He further claims that Ryan is liable for Stanton's and Davis's Fourteenth Amendment violations because she supervised them, failed to adequately investigate their use of force, and prevented Cox from filing a complaint regarding their actions. (*Id.*)

Stanton and Ryan have not disputed that they are state actors for purposes of liability under § 1983, and the Court finds that each acted under color of state law within the meaning of the statute. *See Meadows v. Putnam Cnty.*, No. 2:19-cv-00006, 2020 WL 1532311, at *3 (M.D. Tenn. Mar. 31, 2020) (finding that jail administrator and jail corrections officer acted under color of state law and were therefore persons subject to suit under § 1983). The only remaining question at summary judgment is whether there are genuine issues of material fact that Stanton and Ryan deprived Cox of his constitutional rights.

Stanton and Ryan raise qualified immunity as an affirmative defense to Cox's claims. (Doc. No. 34.) "The qualified-immunity doctrine shields government officials performing discretionary functions from civil liability unless their conduct violates clearly established rights." *Quigley v. Thai*, 707 F.3d 675, 680 (6th Cir. 2013). The goal behind qualified immunity is to "'balance[ ] two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Richko v. Wayne Cnty.*, 819 F.3d 907, 914 (6th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "[A] defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011) (citing *Pearson*, 555 U.S. at 232). Where defendants invoke qualified immunity and carry

their initial summary judgment burden, "the plaintiff bears the burden to show that qualified immunity is inappropriate." *Quigley*, 707 F.3d at 681.

Even if a plaintiff can show a genuine question of material fact as to whether a defendant violated his constitutional rights, the defendant is still entitled to qualified immunity if those rights were not clearly established at the time of violation. "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). In other words, "'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* at 12 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "The precedent clearly establishing a right can be in the form of a case of 'controlling authority or a robust consensus of cases of persuasive authority.'" *Latits v. Phillips*, 878 F.3d 541, 552 (6th Cir. 2017) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014)).

To demonstrate excessive force in violation of his Fourteenth Amendment rights, Cox "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015); *see also Coley v. Lucas Cnty.*, 799 F.3d 530, 538 (6th Cir. 2015) (quoting *id.*). In determining whether Cox has met this standard, the Court must consider "the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397. The Court "must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (alterations in original) (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)). The Supreme Court has set forth several factors "to

illustrate the types of objective circumstances potentially relevant to a determination of excessive force" in this context, including:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). These factors are "not exclusive." *Coley*, 799 F.3d at 538.

### 1. Cox's § 1983 Claim Against Stanton

Stanton argues that he is entitled to qualified immunity from Cox's excessive force claim because Cox cannot show that the amount of force Stanton used against him was objectively unreasonable in light of Cox's resistance. (Doc. No. 34.) Stanton further argues that, even if Cox could show that the use of force was objectively unreasonable, Cox cannot show that his right to be free from that force was clearly established at the time of the violation. (*Id.*) Cox has not responded to Stanton's arguments.

The undisputed record evidence shows that, before Stanton entered Cox's cell to handcuff him, Stanton was yelling and hitting and kicking his cell door. (Doc. No. 37.) The defendants have established through their statement of undisputed material fact that, "[w]hen inmates display such aggressive behavior, it enhances the risk of other inmates joining in such behavior or engaging in riotous behavior, or the inmate could harm himself or destroy[ ] the cell itself." (*Id.* at PageID# 193, ¶ 13 (citing Doc. No. 36).) Stanton "instructed Cox to stop yelling and banging the door[,]" "advised [Cox] to calm down," and "directed Cox to put his hands behind his back" before using any force to handcuff Cox. (*Id.* at PageID# 193–94, ¶¶ 8, 12, 18 (citing Doc. No. 36).) Cox did not comply. (Doc. No. 37.) Instead, when Stanton took Cox's arm to place it behind his back, Cox "began to resist being handcuffed." (*Id.* at PageID# 195, ¶ 21 (citing Doc. No. 36).) When

Stanton attempted to place Cox against the wall to neutralize his resistance and handcuff him, he "continually yelled at [ ] Cox to stop resisting," but "Stanton was never able to use enough force to gain control of the situation or [ ] Cox." (*Id.* at ¶¶ 22–24 (citing Doc. No. 36).) Stanton cuffed one of Cox's wrists, the two continued to struggle, and Cox exited the cell dragging Stanton behind him. (Doc. No. 37.) Stanton finally cuffed Cox's other wrist, but "Cox continued to grapple toward the pod door as the struggle continued" and "Stanton continued to try to get [ ] Cox to the wall for a tactical advantage." (*Id.* at PageID# 196, ¶¶ 29, 30 (citing Doc. No. 36).) Cox "continued to fight, struggle, curse, scream, and flail all the way to the [b]ooking area." (*Id.* at PageID# 197, ¶ 31 (citing Doc. No. 36).) "During the altercation, Stanton feared for his own safety and only used the force that he believed was necessary to gain control of [ ] Cox." (*Id.* at ¶ 32.) Cox complained after the altercation "that his hand was cut but made no other complaints of injury" and "made no requests for medical care . . . ." (Doc. No. 35, PageID# 181, ¶ 5.)

Viewing these undisputed facts and the record evidence as a whole in the light most favorable to Cox and considering the *Kingsley* factors, 576 U.S. at 397, the Court finds that Stanton has carried his initial burden to show an absence of any genuine dispute of material fact that the force he used to handcuff Cox was objectively reasonable. Stanton made efforts to limit the amount of force used by verbally instructing Cox to stop yelling, kicking, and hitting his cell door; to calm down; to place his hands behind his back; and to stop resisting Stanton's attempts to handcuff him. Cox actively resisted Stanton, including physically dragging Stanton out of Cox's cell and into the common area of the pod. Stanton reasonably perceived Cox's behavior to be a threat to his own safety. The only evidence in the record about the amount of force Stanton used is that he struggled and grappled with Cox and unsuccessfully attempted to place Cox against a wall to handcuff and subdue Cox. The defendants have explained why Cox's aggressive behavior was a security

problem. Stanton has asserted that he did not use any force after Cox was subdued. Cox's only injury was a cut finger for which he did not receive or request medical attention.

The Sixth Circuit has held that courts must give prison officials "wide-ranging deference" in analyzing an official's decision to use force to control a prison disturbance:

> [O]fficials confronted with a prison disturbance must balance the threat [that] unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010) (alteration in original) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002)). The facts in evidence here are distinguishable from the facts at summary judgment in *Choate v. Arms*, 274 F. Supp. 3d 782 (M.D. Tenn. 2017), another case involving allegations that a corrections officer used excessive force in placing a pretrial detainee against a wall. In that case, the Court denied the defendant corrections officer's motion for summary judgment based on qualified immunity because the record contained, among other things, video and testimonial evidence that the plaintiff was already handcuffed and was not actively resisting when the defendant placed him against a wall with enough force that the plaintiff hit his head and developed a knot on his forehead. *Id.* at 782–87. There is no similar record here. Indeed, there is no evidence in the record that Stanton ever pushed Cox into a wall, only Stanton's own sworn statement that he attempted to do so to neutralize Cox.

Because Stanton has carried his initial summary judgment burden, the burden shifts to Cox to "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (citation omitted); *see also Blizzard*, 698 F.3d at 282. Cox has not responded to Stanton's summary judgment arguments and has not provided any specific record evidence showing a

genuine issue for trial. Stanton is therefore entitled to qualified immunity on Cox's excessive force claim against him.

### 2. Cox's § 1983 Claim Against Ryan

Ryan argues that she is entitled to qualified immunity from Cox's § 1983 claim against her because Cox cannot establish, based on record evidence, that she "either directly participated in the alleged unconstitutional conduct" by Stanton or Davis "or personally authorized or approved the activity." (Doc. No. 34, PageID# 177 (citing *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)).) Ryan asserts in the defendants' statement of undisputed material facts that she was not present and did not participate in Cox's altercations with Stanton, Davis, or any other correctional officer, and that she did not authorize or approve "any behavior known to be unconstitutional by any corrections officer." (Doc. No. 37, PageID# 197, ¶ 35.) Because Cox has not responded in opposition to these asserted facts, the Court must deem them undisputed for purposes of summary judgment. *See* M.D. Tenn. R. 56.01(f) (failure to respond).

Construing these undisputed facts and the record evidence as a whole in the light most favorable to Cox, the Court finds that Ryan has carried her initial burden to show an absence of any genuine dispute of material fact that she is liable for any violations of Cox's Fourteenth Amendment rights. There is no record evidence to support a finding that Ryan "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of [any] offending officers" or that Ryan's "execution of . . . her job function cause[d] injury to [Cox.]" *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

The burden therefore shifts to Cox. *Celotex Corp.*, 477 U.S. at 324 (citation omitted); *see also Blizzard*, 698 F.3d at 282. Again, Cox has not provided any specific record evidence showing

a genuine issue for trial. Ryan is therefore entitled to qualified immunity from Cox's supervisory-liability claim against her.

IV. **Recommendation**

For these reasons, the Magistrate Judge RECOMMENDS that Defendants Stanton and Ryan's motion for summary judgment (Doc. No. 33) be GRANTED and that the Court enter judgment in their favor.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 12th day of September, 2022.

ALISTAIR E. NEWBERN
United States Magistrate Judge